United States District Court
Southern District of Texas

**ENTERED**

September 30, 2020

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

WREN RIPOLL,                              §
                                          §
                    Plaintiff,            §
                                          §
v.                                        §        CIVIL ACTION NO. H-20-1193
                                          §
RBC CAPITAL MARKETS, LLC and              §
FRANCIS J. O'NEILL, III,                  §
                                          §
                    Defendants.           §

## MEMORANDUM OPINION AND ORDER

Plaintiff Wren Ripoll ("Plaintiff") sued defendants RBC Capital Markets, LLC ("RBC") and Francis O'Neill, III ("O'Neill") (collectively, "Defendants") in the 400th District Court of Fort Bend County, Texas.[1] Defendants timely removed the action to this court.[2] Pending before the court are Plaintiff's Motion to Remand (Docket Entry No. 17) ("Motion to Remand"), Defendant RBC Capital Markets, LLC's Motion to Dismiss Amended Complaint and Memorandum of Law in Support (Docket Entry No. 24) ("RBC's 12(b)(6) Motion"), and Francis J. O'Neill's Motion to Dismiss Amended Complaint (Docket Entry No. 25) and Memorandum of Law in Support

---

[1]Plaintiff's Original Petition, Exhibit A to Amended Notice of Removal, Docket Entry No. 8-1, p. 2; Amended Notice of Removal, Docket Entry No. 8, p. 1. All page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Notice of Removal, Docket Entry No. 1, p. 1; see also Amended Notice of Removal, Docket Entry No. 8, p. 1.

("O'Neill's 12(b)(6) Motion").  For the reasons explained below, Plaintiff's Motion to Remand will be granted, and Defendants' motions to dismiss will be denied as moot for lack of jurisdiction.

## I.  <u>Factual and Procedural Background</u>

Plaintiff has worked in the securities industry of Houston, Texas, as a financial advisor since 1995.[3]  While working for Wells Fargo Investments/Wells Fargo Advisors between 2002 and 2014 Plaintiff entered a business arrangement with O'Neill to manage over $200,000,000 in assets.[4]  In May of 2014 RBC recruited Plaintiff and O'Neill as a team to transfer their securities business to RBC.[5]  Plaintiff executed an Employment Agreement with RBC on May 28, 2014.[6]

Plaintiff alleges that around the same time she and O'Neill entered an oral contract (the "Oral Team Agreement") governing their responsibilities as part of the team working for RBC.[7]  Under the alleged Oral Team Agreement, Ripoll would have responsibility to service clients' accounts, and O'Neill had responsibility to (1) grow the team's assets, (2) pay staff members at the team's

---

[3]Plaintiff's First Amended Complaint ("Amended Complaint"), Docket Entry No. 20, p. 2 ¶ 6.

[4]<u>Id.</u> ¶¶ 6-7.

[5]<u>Id.</u> ¶ 7.

[6]<u>Id.</u> at 3 ¶ 9.

[7]<u>Id.</u> at 4 ¶ 11.

office "client associate incentive pay" ("CAI pay"), and (3) drive to and pay for any outings with current or prospective clients.[8]

On June 30, 2015, Plaintiff and O'Neill signed an RBC Wealth Management Team Agreement (the "Written Team Agreement") setting forth their rights and obligations in their team arrangement under RBC.[9] Under the Written Team Agreement, Plaintiff and O'Neill were assigned a split financial advisor number ("split FA number") and were to "be considered to have shared responsibility for all registered representative activities in the client accounts falling under said split FA number . . . ."[10]   The Written Team Agreement includes an integration clause that states:  "This Agreement super-sedes any prior verbal or written understandings or agreements between the Parties respecting the subject matter of this Agreement . . . ."[11]

Plaintiff alleges generally that O'Neill did not diligently fulfill his responsibilities under the agreements because he spent little, if any, time working.[12]  She alleges that he specifically breached the Oral Team Agreement by failing to cover the costs of

---

[8]Id.

[9]Id. at 3 ¶¶ 9-10; Written Team Agreement, Exhibit B to Motion to Remand, Docket Entry No. 17-2, pp. 2 ¶ 1, 5.

[10]Written Team Agreement, Exhibit B to Motion to Remand, Docket Entry No. 17-2, p. 2 ¶ 6e.

[11]Id. at 4 ¶ 14.

[12]Amended Complaint, Docket Entry No. 20, p. 4 ¶ 12, p. 5 ¶ 13.

client outings and employee CAI pay.[13]   Plaintiff also alleges that
O'Neill breached the Written Team Agreement by encouraging a client
to engage in fraudulent conduct and lying to Plaintiff about his
authority to purchase a bond for a client who could not legally
hold the bond.[14]

RBC terminated Plaintiff's employment in May of 2019.
Plaintiff alleges that she was terminated because O'Neill failed to
ensure someone would answer client phone calls to the office while
she was on vacation.[15]   After her termination Plaintiff brought
claims against Defendants under the Financial Industry Regulatory
Authority, which were dismissed without prejudice to her right to
file claims in court.[16]   Plaintiff brought discrimination claims
against RBC before the Equal Employment Opportunity Commission
("EEOC"), which were likewise dismissed without prejudice to her
right to file suit in court.[17]

On March 5, 2020, Plaintiff filed this action in state court
alleging claims for breach of contract, wrongful termination,
negligence in supervising an employee, negligently or intentionally
creating a toxic work environment, and a violation of the Minnesota

---

[13]Id. at 4-5 ¶ 12.

[14]Id. at 15 ¶ 34.

[15]Id. at 6 ¶ 16.

[16]Id. at 7 ¶ 19.

[17]Id.

-4-

Whistleblower's Statute against RBC.[18] Plaintiff also alleged claims for breach of contract and negligently or intentionally creating a toxic work environment against O'Neill and sought various related declaratory relief against both Defendants.[19] On April 3, 2020, Defendants removed the action to this court on the basis of both federal question and diversity jurisdiction.[20] Defendants assert that Plaintiff is a citizen of Texas, RBC is a citizen of Delaware and New York, and O'Neill is a citizen of Texas but was improperly joined to the action to defeat diversity jurisdiction.[21]

Plaintiff filed her Motion to Remand on May 1, 2020,[22] and her unopposed Amended Complaint on May 14, 2020.[23] The Amended Complaint clarifies that her state law theories of recovery against O'Neill are for breach of the Written Team Agreement, Breach of the Oral Team Agreement, and intentional infliction of emotional distress.[24] Defendants responded to the Motion to Remand on June 10, 2020, and Plaintiff replied on June 23, 2020. Defendants

---

[18]Plaintiff's Original Petition, Exhibit A to Amended Notice of Removal, Docket Entry No. 8-1, pp. 11-13.

[19]Id.

[20]Notice of Removal, Docket Entry No. 1, pp. 1, 2, 4.

[21]Amended Notice of Removal, Docket Entry No. 8, p. 2 ¶ 5.

[22]Motion to Remand, Docket Entry No. 17.

[23]Amended Complaint, Docket Entry No. 20.

[24]Id. at 14-16.

each filed motions to dismiss the claims alleged against them in the Amended Complaint on May 20, 2020.[25]   Plaintiff responded on June 10, 2020,[26] and Defendants replied on June 24, 2020.[27]

## II.  **Plaintiff's Motion to Remand**

Under 28 U.S.C. § 1441(a) any state court civil action over which a federal court would have original jurisdiction may be removed from state to federal court.  Defendants' Amended Notice of Removal asserts that the court has federal question jurisdiction because a claim of sex discrimination under Title VII of the Civil Rights Act of 1964 appears on the face of the complaint even though Plaintiff has not explicitly alleged such a claim.[28]   Defendants also assert that the court may exercise diversity jurisdiction over the action because Plaintiff is diverse from RBC, alleges damages of over $400,000, and O'Neill was improperly joined.[29]   Plaintiff

---

[25]RBC's 12(b)(6) Motion, Docket Entry No. 24; O'Neill's 12(b)(6) Motion, Docket Entry No. 25.

[26]Plaintiff's Response to Defendant RBC's Motion to Dismiss, Subject to Plaintiff's Motion to Remand, Docket Entry No. 26; Plaintiff's Response to Defendant O'Neill's Motion to Dismiss, Subject to Plaintiff's Motion to Remand, Docket Entry No. 27.

[27]Defendant RBC Capital Markets, LLC's Reply Brief in Support of Its Motion to Dismiss Amended Complaint ("RBC's Reply"), Docket Entry No. 30; Defendant Francis J. O'Neill, III's Reply Brief in Support of His Motion to Dismiss Amended Complaint ("O'Neill's Reply"), Docket Entry No. 31.

[28]Amended Notice of Removal, Docket Entry No. 8, pp. 2-3 ¶ 6.

[29]Id. at 4 ¶¶ 11-13.

disagrees and contends that the court must remand the action for lack of subject matter jurisdiction.[30]

## A.   Federal Question Jurisdiction

### 1.   Legal Standard

Federal district courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 107 S. Ct. 2425, 2429 (1987).  "Since a defendant may remove a case only if the claim could have been brought in federal court, . . . the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" Merrell Dow Pharmaceuticals Inc. v. Thompson, 106 S. Ct. 3229, 3232 (1986).  If a plaintiff chooses not to present a federal claim, even though one is potentially available, the defendant may not remove the case from state to federal court. See, e.g., The Fair v. Kohler Die & Specialty Co., 33 S. Ct. 410, 411 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon, and therefore does determine whether he will bring a 'suit arising under' the . . . law of the

---

[30]Motion to Remand, Docket Entry No. 17.

United States . . . ."). "Even an inevitable federal defense does not provide a basis for removal jurisdiction." Bernhard v. Whitney National Bank, 523 F.3d 546, 551 (5th Cir. 2008). Congress only provided for removal of a case from state to federal court when a plaintiff's complaint alleges a claim "arising under" federal law, within the meaning of § 1331. See 28 U.S.C. § 1441; Beneficial National Bank v. Anderson, 123 S. Ct. 2058, 2062 (2003). A case "arises under" federal law if it appears from the face of a well-pleaded complaint that the cause of action is created by federal law. Beneficial National Bank, 123 S. Ct. at 2062.

   2.  Analysis

   Defendants' Amended Notice of Removal asserts that the court has federal question jurisdiction over the action because Plaintiff's Original Petition references the EEOC's dismissal of her discrimination suit without prejudice, states that the action "is being filed, based at least in part upon the authority granted to" Plaintiff in that dismissal, and generally alleges that "RBC discriminated against Wren Ripoll, as a woman."[31] Defendants argue that these references establish a federal claim for sex discrimination under Title VII of the Civil Rights Act of 1964.[32]

---

[31]Amended Notice of Removal, Docket Entry No. 8, p. 3 ¶ 7; see Plaintiff's Original Petition, Exhibit A to Amended Notice of Removal, Docket Entry No. 8-1, pp. 8, 11.

[32]Amended Notice of Removal, Docket Entry No 8, p. 2 ¶ 6, p. 3 ¶¶ 8-9.

Plaintiff disagrees and argues that she did not allege a federal cause of action. The parties agree that Plaintiff's Original Petition does not explicitly allege a Title VII claim.[33] The issue is whether the references to discrimination and the EEOC's dismissal nevertheless state a federal claim.

A state court petition that attaches and "incorporates by reference" an EEOC charge that alleges discrimination in violation of Title VII states a federal Title VII claim under FRCP 10(c), under which "'[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.'" Davoodi v. Austin Independent School District, 755 F.3d 307, 310 (5th Cir. 2014). A state court petition that merely refers to such an EEOC charge or proceeding, however, does not incorporate the EEOC allegations into the petition for the purposes of federal question jurisdiction. Garrett v. Southern Newspapers, Inc., Civil Action H-18-2578, 2018 WL 4352914, at *2 (S.D. Tex. Sept. 12, 2018); Pidgeon v. East Baton Rouge Sheriff's Office, Civil Action No. 17-342-JJB-RLB, 2017 WL 3996436, at *3 (M.D. La. Aug. 21, 2017); Williamson v. Pay and Save, Inc., 205 F. Supp. 3d 863, 867 (W.D. Tex. 2015); Rodriguez v. Conagra Foods, Inc., No. 4:02-CV-752-A, 2002 WL 31548746, at *2 (N.D. Tex. Nov. 12, 2002). District courts in this circuit have uniformly declined to extend Davoodi to find that a reference to an EEOC discrimination charge stated a

---

[33]Id. at 3 ¶ 8; Motion to Remand, Docket Entry No. 17, p. 15.

federal cause of action where the state court petition did not attach and incorporate the EEOC charge by reference. See, e.g., Garrett, 2018 WL 4352914, at *2; Williamson, 205 F. Supp. 3d at 867. The court agrees with these decisions and concludes that Davoodi is inapposite because Plaintiff's Original Petition did not attach and incorporate by reference the EEOC charge.

Defendants argue that the Original Petition does more than merely reference the EEOC charge because it states that "[t]his suit is being filed, based at least in part upon the authority granted to [Plaintiff] in the EEOC's February 13, 2020 Dismissal and Notice of Rights."[34] The Original Petition also quotes two paragraphs from the EEOC Dismissal and Notice, which state that (1) the EEOC made no conclusions or findings with respect to the charge, and (2) Plaintiff had the right to file a lawsuit under federal law within 90 days.[35] The court is not persuaded that this language states a claim under Title VII. Nowhere in the Original Petition does Plaintiff actually assert a cause of action based on a federal statute. To state a federal claim Plaintiff needed to actually assert one; stating facts that indicate one may have been available is not enough. See Alexander v. Woodlands Land

_____

[34]Defendants' Opposition to Plaintiff's Motion for Remand ("Defendants' Response"), Docket Entry No. 28, p. 4, citing Plaintiff's Original Petition, Exhibit A to Amended Notice of Removal, Docket Entry No. 8-1, p. 10.

[35]Plaintiff's Original Petition, Exhibit A to Amended Notice of Removal, Docket Entry No. 8-1, p. 11.

<u>Development Co. L.P.,</u> 325 F. Supp. 3d 786, 791-92 (S.D. Tex. 2018). That the Original Petition informed the state court that EEOC proceedings had been attempted and suggested that a federal discrimination claim may have been available does not establish a Title VII discrimination claim on the face of the well-pleaded complaint.

Plaintiff is master of her complaint and has the right to rely only on state-law grounds to pursue claims based on the alleged sex discrimination even if federal grounds are available. <u>Caterpillar,</u> 107 S. Ct. at 2429 & n.7; <u>Lamb v. Laird,</u> 907 F. Supp. 1033, 1035 (S.D. Tex. 1995). Plaintiff's allegations that she was discriminated against may support viable state-law claims, and she was free to rely solely on those claims and disregard any federal one. <u>Rodriguez,</u> 2002 WL 31548746, at *2. A plaintiff who exercises this right is not engaged in "artful pleading" or gamesmanship. <u>Id.</u> The court concludes that Plaintiff's well-pleaded Original Petition does not assert a federal Title VII claim. And Defendants have not argued that a federal claim appears on the face of the Amended Petition. Accordingly, the court concludes it does not have federal question jurisdiction over the action.

## B.   Diversity Jurisdiction

### 1.   <u>Legal Standard</u>

Federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in

controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Diversity of citizenship exists between the parties if each plaintiff has a different citizenship from each defendant. Getty Oil Corp., a Division of Texaco, Inc. v. Insurance Co. of North America, 841 F.2d 1254, 1258 (5th Cir. 1988).

"Ordinarily, for diversity jurisdiction to lie, there must be complete diversity between parties, which 'requires that all persons on one side of the controversy be citizens of different states than all persons on the other side.'" Vaillancourt v. PNC Bank, National Ass'n, 771 F.3d 843, 847 (5th Cir. 2014) (quoting Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008)). "There is, however, a 'narrow exception' to that rule for situations of improper joinder, where, as relevant here, the party seeking removal (or challenging remand) demonstrates 'that there is no possibility of recovery by the plaintiff against an in-state defendant.'" Vaillancourt, 771 F.3d at 847 (quoting McDonal v. Abbott Laboratories, 408 F.3d 177, 183 (5th Cir. 2005)).

Courts use the standard for dismissal for failure to state a claim under Rule 12(b)(6) to determine whether a defendant has been improperly joined. Smallwood v. Illinois Central Railroad Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Under that standard, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" against each defendant. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "[D]etailed factual allegations" are not required, but a complaint that establishes the

grounds that entitle the plaintiff to relief "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 1959.  The court must "accept the plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff." Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007).  Where the plaintiff's pleadings have been amended after removal as a matter of course, courts perform the improper joinder analysis based on the claims and allegations asserted in the amended, live pleading, rather than the original state court petition. Malone v. Blue Cross and Blue Shield of Texas, Inc., Civil Action No. 3:18-CV-2757-K, 2019 WL 4192286, at *2 (N.D. Tex. Sept. 3, 2019); LC Farms, Inc. v. McGuffee, Civil Action No. 2:12-cv-165-SA-JMV, 2012 WL 5879433, at *3 (N.D. Miss. Nov. 21, 2012); Mills Group Ltd. v. Oceanografia, S.A. de C.V., Civil Action No. H-08-3449, 2009 WL 3756931, at *2 (S.D. Tex. Nov. 6, 2009).

   2.   Analysis

   Defendants argue that O'Neill was improperly joined because there is no reasonable possibility that Plaintiff would recover on her claims against him.[36]   Plaintiff argues that she has a reasonable possibility of recovery on all of her claims against O'Neill:  (1) breach of the Written Team Agreement, (2) breach of the Oral Team Agreement, and (3) intentional infliction of

_____

[36]Defendants' Response, Docket Entry No. 28, pp. 13-15.

emotional distress.[37]  If there is a possibility that Plaintiff can recover on any of her claims against O'Neill, the court cannot find improper joinder.  Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003); Malone, 2019 WL 4192286, at *2.  The court will assess Plaintiff's possibility of recovery against O'Neill based on the allegations in her live pleading, the Amended Complaint.  See Mills Group, 2009 WL 3756931, at *2.

Defendants argue that Plaintiff cannot recover on her claim for breach of the Oral Team Agreement because (1) it is barred by the statute of limitations, and (2) she has not alleged sufficient facts to support the claim.[38]  Texas imposes a four-year statute of limitations on contract claims.  Tex. Civ. Prac. & Rem. Code § 16.004.  Contract claims fail if there is no allegation of breach within the limitations period.  Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).  Defendants argue that O'Neill could not have breached the Oral Team Agreement within the limitations period because it was superseded by the Written Team Agreement over four years ago.[39]  The Written Team Agreement contains an integration clause that states:  "This Agreement supersedes any prior verbal or written understandings or agreements between the Parties respecting the subject matter of this Agreement . . . ."[40]  Plaintiff argues

---

[37]Motion to Remand, Docket Entry No. 17, pp. 21, 23, 26.

[38]Defendants' Response, Docket Entry No. 28, pp. 17-18.

[39]Id.

[40]Written Team Agreement, Exhibit B to Motion to Remand, Docket Entry No. 17-2, p. 4 ¶ 14.

-14-

that the Written Team Agreement did not supersede the Oral Team Agreement despite the integration clause because the two agreements are not inconsistent with one another.[41]

In discussing the effect of the integration clause Defendants and Plaintiff have cited Texas and Minnesota law respectively but have not addressed choice of law.  When different state laws may apply, federal courts exercising diversity jurisdiction apply the choice-of-law rules of the forum state.  <u>Mayo v. Hartford Life Insurance Co.</u>, 354 F.3d 400, 403 (5th Cir. 2004).  Texas courts do not engage in choice-of-law analyses unless there is a conflict of laws that affects the outcome of the case.  <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 419 (Tex. 1984).  Under both Texas and Minnesota law an integration clause prevents the enforcement of prior or contemporaneous agreements only if they are inconsistent with the integrated agreement; prior agreements that are not inconsistent with or that do not contradict the express or implied terms of the integrated agreement remain enforceable.  <u>Hallmark v. Port/Cooper-T. Smith Stevedoring Co.</u>, 907 S.W.2d 586, 590 (Tex. App.—Corpus Christi 1995, no writ); <u>W.R. Millar Co. v. UCM Corp.</u>, 419 N.W.2d 852, 855 (Minn. Ct. App. 1988).  Because Minnesota and Texas law do not conflict on this or other contract issues raised in the Motion to Remand, the court need not conduct a choice-of-law analysis.  Under either Texas or Minnesota law whether the Written

---

[41]Plaintiff's Reply in Support of Motion to Remand ("Plaintiff's Reply"), Docket Entry No. 29, p. 17.

Team Agreement superseded the Oral Team Agreement depends on whether the Oral Team Agreement is collateral to, inconsistent with, or contradictory to the Written Team Agreement.  A collateral agreement is one that the parties might naturally make separately and is not clearly connected with the principal transaction of the integrated agreement.  See Boy Scouts of America v. Responsive Terminal Systems, Inc., 790 S.W.2d 738, 745 (Tex. App.—Dallas 1990, writ denied); Millar, 419 N.W.2d at 855.

Plaintiff alleges that under the Oral Team Agreement O'Neill agreed to grow the Team's assets, pay staff members their CAI pay, and drive to and pay for outings with current or prospective clients; and Ripoll agreed to service the clients' accounts.[42]  The Written Team Agreement is not attached to the Amended Complaint, but the court may consider it because it is referred to and central to Plaintiff's breach of contract claims.  See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).  The only clause in the Written Team Agreement either party has pointed to as relevant is Section 6.e, which states:

> [Financial advisors] comprising the team and related split FA number, will be considered to have shared responsibility for all registered representative activities in the client accounts falling under said split FA number unless documentation exists that expressly defines the roles/responsibilities of the FA team members under the subject split FA number.[43]

---

[42]Amended Complaint, Docket Entry No. 20, p. 4 ¶ 11.

[43]Written Team Agreement, Exhibit B to Motion to Remand, Docket Entry No. 17-2, pp. 2-3 § 6e.

Plaintiff argues that the Written Team Agreement contemplates that the parties might make separate agreements regarding specific job duties and that the two agreements do not have contradictory terms.[44]

"[T]he primary goal of contract interpretation is to determine and enforce the intent of the parties." Motorsports Racing Plus, Inc. v. Arctic Cat Sales, Inc., 666 N.W.2d 320, 323 (Minn. 2003); see also URI, Inc. v. Kleberg County, 543 S.W.3d 755, 757 (Tex. 2018). "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." Motorsports Racing, 666 N.W.2d at 323; see also URI, 543 S.W.3d at 757-58. The Written Team Agreement states that Plaintiff and O'Neill would have "shared responsibility" over activities in the client accounts. Because the term "responsibility" is not defined by the Written Team Agreement, it is proper for the court to consider the dictionary definition. See Transocean Offshore Deepwater Drilling Inc. v. Noble Corp. Plc, 451 F. Supp. 3d 690, 699 (S.D. Tex. 2020); Grinnell Mutual Reinsurance Co. v. Villanueva, 37 F. Supp. 3d 1043 (D. Minn. 2014). The dictionary definition of "responsibility" is the state of being responsible in a moral, legal, or mental sense. Merriam-Webster's Collegiate Dictionary 998 (10th ed. 1996). Being "responsible" means being liable to be called on to answer for something, or as the agent of something. Id. The plain meaning of the term "shared responsibility" in

---

[44]Plaintiff's Reply, Docket Entry No. 29, p. 17.

Section 6.e is therefore that Plaintiff and O'Neill could both be called to account for any action in representing the client accounts by either of them. It is silent as to the division of labor between the parties in administering those accounts. Because the Written Team Agreement does not address the same subject matter and is not inconsistent with or contradicted by the alleged Oral Team Agreement on the division of work, the court concludes that the integration clause did not render the Oral Team Agreement unenforceable. Accordingly, Defendants' argument that the Oral Team Agreement could not have been breached within the limitations period fails, and Plaintiff's claim for breach of the Oral Team Agreement is not barred by limitations.

Defendants also argue that Plaintiff has not alleged sufficient facts to plausibly establish breach of the Oral Team Agreement.[45] To state a claim for which relief may be granted, the Amended Complaint need only provide the grounds that entitle Plaintiff to relief, not "detailed factual allegations." Twombly, 127 S. Ct. at 1964. The court is not persuaded by Defendants' argument that the Amended Complaint is too vague to be enforceable. For example, the Amended Complaint alleges that O'Neill agreed to pay the CAI pay for staff members in the team's branch office and alleges multiple specific instances where O'Neill did not pay it or at least allow an inference that he did not meet the alleged obligation:

---

[45]Defendants' Response, Docket Entry No. 28, pp. 18-19.

O'Neill reduced the CAI pay for assistants, which was supposed to be 4% of his revenues, and had Ripoll contribute to it as well. Ripoll came out of pocket to cover the CAI pay for some of the sales associates. Ripoll paid out of pocket over 0.5% of her commission for Stephanie Pena-Rivera's CAI pay from 2017-2018. After Stephanie was fired, Ripoll had to use her Business Spending Account to cover the $250 monthly CAI pay for Kelly Schubert, and Ripoll gave 0.5% of her commissions to Kelly's assistant, Esther Salas.[46]

These facts taken as true and in a light most favorable to Plaintiff sufficiently allege that O'Neill breached the Oral Team Agreement by failing to cover the employees' CAI pay and that Ripoll suffered monetary damages as a result. The court is persuaded that Plaintiff's Amended Complaint establishes a reasonable possibility of recovery on at least her claim for breach of the Oral Team Agreement.

Since the court has concluded that Plaintiff may plausibly recover on at least her claim for breach of the Oral Team Agreement, it need not consider her possibility of recovery against O'Neill on any of her other claims. Defendants have not met the heavy burden to demonstrate that there is no possibility of recovery by Plaintiff against O'Neill on at least one of her claims. See Smallwood, 385 F.3d at 573. Thus, the court cannot conclude that O'Neill was improperly joined. The court therefore lacks diversity jurisdiction over the action because Plaintiff and O'Neill are both Texas citizens.

---

[46]Amended Complaint, Docket Entry No. 20, p. 16.

For the reasons explained above, the court concludes that it does not have federal question or diversity jurisdiction over the action. The court therefore lacks subject-matter jurisdiction and must remand the action to state court. Lacking jurisdiction, the court has made no ruling on the merits of Plaintiff's claims and will deny Defendants' 12(b)(6) Motions as moot.

### III.   <u>Conclusion and Order</u>

For the reasons explained above, the court lacks subject-matter jurisdiction over the action and must remand it to state court. Accordingly, Plaintiff's Motion to Remand (Docket Entry No. 17) is **GRANTED.** Defendant RBC Capital Markets, LLC's Motion to Dismiss Amended Complaint (Docket Entry No. 24) and Defendant Francis J. O'Neill's Motion to Dismiss Amended Complaint (Docket Entry No. 25) are **DENIED AS MOOT.**

This action is **REMANDED** to the 400th District Court of Fort Bend County, Texas. The Clerk will promptly deliver a copy of this Memorandum Opinion and Order to the District Clerk of Fort Bend County, Texas.

**SIGNED** at Houston, Texas, on this 30th day of September, 2020.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE